**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CARLOS ROBERTO HERNANDEZ,**<br>**Petitioner,**<br><br>**v.**<br><br>**J.L. JAMISON, JOHN E. RIFE, MARKWAYNE MULLIN, TODD BLANCHE, and U.S. DEPARTMENT OF HOMELAND SECURITY,**<br>**Respondents.** | **CIVIL ACTION**<br><br><br><br>**NO. 26-cv-7606** |

**MEMORANDUM OPINION**

Petitioner Carlos Roberto Hernandez brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his arrest and detention by the Department of Homeland Security as unlawful under the Immigration and Nationality Act ("INA"), its implementing regulations, the United States Constitution, and the *Accardi* doctrine. For the reasons that follow, his Petition shall be granted.

## I. FACTUAL BACKGROUND

Carlos Roberto Hernandez is a native and citizen of Honduras who has been living in the United States since approximately 2015. He works as a cook, and he has a wife and two children, one of whom has asylum status. He has no criminal history. Since arriving in the United States, Hernandez has not encountered immigration officials, nor has he been required to attend check-ins with Immigration and Customs Enforcement ("ICE") and has never filed any immigration applications.

On September 23, 2026, Hernandez was shopping at Lowe's in Quakertown, Pennsylvania. After he returned to the car he was using, four armed ICE officers in three different vehicles stopped the car and told him to exit, scanned his face with a phone, took his

ID, and placed him under arrest. They did not have a warrant for Hernandez's arrest. Rather, they were conducting a targeted enforcement operation in the area, and detained Hernandez because he was driving a vehicle registered to the target of the operation. Hernandez was not the target of the operation.

Later that day, ICE processed Hernandez and placed him into removal proceedings by issuing a Notice to Appear and charging him as removable under Section 212(a)(6)(A)(i) of the INA. 8 U.S.C. § 1182(a)(6)(A)(i). ICE agents assigned Hernandez an alien registration number, and presented him with the Notice to Appear, a Notice of Custody Determination, and a Form I-200 administrative warrant—all of which were generated after his arrest. ICE agents also administered some form of unknown injection. After processing, ICE agents transported Hernandez to the Federal Detention Center in Philadelphia, Pennsylvania, where he remains detained. Hernandez requested that an Immigration Judge review ICE's custody determination. He has a scheduled bond hearing before an Immigration Judge in Elizabeth, New Jersey on October 16, 2026.

Hernandez filed the instant petition for habeas relief awaiting his scheduled bond hearing and argues that his continued detention violates Section 1226(a) of the INA, 8 U.S.C. § 1226(a), and its implementing regulations, 8 C.F.R. §§ 236.1, 1236(c)(8), as well as the Due Process Clause of the Fifth Amendment to the United States Constitution, U.S. Const. amend. V, and the doctrine set forth in *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954) (the "*Accardi* Doctrine"). The Government in response argues that the Petition should be denied because Hernandez must exhaust his administrative requirements, that his substantive and procedural due process rights have not been infringed, and that the Government has not violated the *Accardi* doctrine. The Government also requests that the Court vacate its October 2, 2026

order requiring that Hernandez not be transferred without further order of the Court. *See* ECF No. 2. The question to be addressed is whether Hernandez may continue to be detained pending his scheduled bond hearing consistent with his due process rights. For the following reasons, he shall be released.

## II. DISCUSSION

### a. Standard of Review

Federals courts are empowered by 28 U.S.C. § 2241 to review the legality of immigration detention. *Zadyvdas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner is entitled to relief if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petitioner bears the burden of demonstrating that his detention is unlawful. *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

### b. Exhaustion of Administrative Remedies Is Excused.

Prior to seeking habeas relief, petitioners "are ordinarily required to exhaust their administrative remedies." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases). However, Section 2241 contains "no [explicit] exhaustion requirement." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion under Section 2241 is therefore prudential. *Dos Reis v. McShane*, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026). Courts may excuse prudential exhaustion if "administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Exhaustion is excused under these circumstances. While this Court has in a prior case denied a petition for habeas relief where the petitioner did not exhaust his administrative remedies, that decision was based on the petitioner's

failure to request a bond hearing. *See Pereira de Sousa v. Jamison*, No. 26-4797, Memorandum (ECF No. 8), (July 21, 2026) (Beetlestone, C.J.). Hernandez has requested a bond hearing, and he is scheduled for one on October 16, 2026.

Hernandez challenges the legality of his detention, that is, his deprivation of liberty. He argues, *inter alia,* that the Government failed to conduct a pre-detention individualized custody determination. Although he is scheduled for an imminent bond hearing, that does not ameliorate the fact that he has been detained for weeks without an individualized custody determination. A later bond hearing does not necessarily cure the alleged constitutional violation that preceded it. *See Dos Reis*, 2026 WL 1746649, at *3; *see also Lopez Benitez v. Francis*, 795 F. Supp.3d 475, 497 (S.D.N.Y. 2025) (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE failed to conduct an individualized assessment before detention); *Gopie v. Lyons*, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) (finding "a bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance"). Further administrative process will not cure Hernandez's deprivation of liberty, so exhaustion is excused.

**c. Hernandez's Arrest Was Unlawful.**

Hernandez's warrantless arrest is unlawful in that it was in violation of Section 1226(a). *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). As the Government points out, the default rule under 8 U.S.C. § 1226(a) is for the government to obtain a warrant prior to arrest. However, 8 U.S.C. § 1357(a)(2) permits a warrantless arrest if an arrestee "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Section 287(a)(2) of the INA provides ICE officers with limited authority to make

warrantless arrests. 8 U.S.C. § 1357(a)(2); see *Arizona v. United States*, 567 U.S. 387, 408 (2012). "Within 48 hours after the warrantless arrest, the Government must determine "'whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 C.F.R. parts 236 and 239 will be issued.'" *Cocha v. Tsoukaris*, 2026 WL 2806733, at *2 n.2 (D.N.J. Sept. 18, 2026) (quoting 8 C.F.R. § 287.3(d)).

Fact patterns resembling Hernandez's arrest have been the subject of several recent decisions in this District. In *Tabora-Brizuela v. Mullin*, 2026 WL 2908095, at *3 (E.D. Pa. Sept. 28, 2026), Judge McHugh granted habeas relief where arresting officers did not have a basis to make a warrantless arrest. There, the arresting officers knew merely that the petitioner was a Latino male passenger in a car with a person of interest. *Id.* Body camera footage in that case showed that no one attempted to flee. *Id.* And there, as here, "the immediate nature of the arrest—the officers were seeking someone else and handcuffed Petitioner before even identifying him—demonstrates that they could not possibly have considered any other information before making the arrest." *Id.* Relatedly, in *Sagbay v. Jamison*, 2026 WL 2875765, at *5 (E.D. Pa. Sept. 24, 2026), Judge Rufe granted habeas relief under circumstances in which a petitioner was arrested without an administrative warrant issued at the time of arrest despite the government's claim that the petitioner was detained under Section 1226. There, the warrant for petitioner's arrest "was not issued until he was already in ICE custody." *Id.* That warrant had no time stamp. *Id.* The petitioner in that matter was "not a target of, or even known to, the agents who arrested him." *Id.* Judge Rufe concluded that because the petitioner's "detention did not occur '[o]n a warrant issued by the Attorney General,' it was unlawful under § 1226(a) in addition to violating procedural due process." *Id.*

Such is the case here. The body worn camera footage from Hernandez's arrest shows that he was surrounded by multiple armed law enforcement agents and their vehicles and was seated in his car for the duration of the agents' "interview." When he was removed from the vehicle, he was held by agents and placed in handcuffs immediately. At no point did he appear to attempt to flee. Per the Government, Hernandez was not the target of its enforcement operation. Instead, he happened to be in a vehicle purportedly registered to the target. As in *Tabora-Brizuela*, the officers here immediately arrested Hernandez despite the fact that they were seeking someone else and that Hernandez identified himself as someone other than the target. Like in *Sagbay*, the Government did not possess an administrative warrant at the time of arrest. Here, while the Notice to Appear is not time-stamped, the Form I-213 Record of Deportable/Inadmissible Alien is time-stamped at 11:40 AM, two hours after Hernandez's arrest. Given these circumstances, Hernandez's arrest was unlawful under Section 1226(a).

**d. Hernandez's Detention Is Unlawful Under 8 U.S.C. § 1226.**

Further, the facts here show that the Government's detention of Hernandez violated his due process rights. As this Court recently held in *Regalado-Nauta v. Jamison*, 2026 WL 2740528, at *3 (E.D. Pa. Sept. 16, 2026), detention under Section 1226(a) is discretionary, and an alien detained under Section 1226 has due process rights, "including a right to an individualized detention determination and a bond hearing." *Id.* (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d))). Judge Sánchez applied similar reasoning in *Dos Reis*, noting that "[b]ecause Petitioner is detained under § 1226(a), ICE had discretion to detain him or release him on bond or conditional parole, but it had to exercise that discretion through an individualized custody determination. The record does not show such an individualized assessment." 2026 WL 1746649, at *4. Judge

Kearney invoked the same rationale in *Perez Angeles v. Jamison*, No. 26-7167, Order (ECF No. 6), (September 22, 2026) (Kearney, J.) (granting habeas relief to a petitioner with a scheduled bond hearing the next day). Likewise, Judge Rufe granted habeas relief in a case in which the Government failed to provide the petitioner with an individualized custody determination or an opportunity to be heard before a scheduled bond hearing. *De Los Santos Medina v. Jamison*, 2026 WL 2742071, at *1 (E.D. Pa. Sept. 16, 2026). Judge Rufe reasoned that the Government must make an individualized custody determination regarding "whether the non-citizen is a danger to property or persons and is likely to appear for any future proceedings" before exercising its discretion to detain a non-citizen. *Id.* at *4. "Relying solely on Petitioner's immigration status amounts to a per se determination that comports not with 1226(a), but with the government's desired policy of detention." *Id.* at *5.

Here, the record is bereft of any evidence of an individualized custody determination prior to Hernandez's present detention. The Government argues that ICE conducted an individualized review of Hernandez's case, offering as support the Form I-213 Record of Deportable/Inadmissible Alien and the Form I-286 Notice of Custody Determination, both generated by ICE agents following Hernandez's arrest. Reviewing the timeline of Hernandez's arrest and processing by ICE, he was arrested at approximately 9:38 AM EDT. The Form I-213 is time-stamped at 11:40 AM on the date of Hernandez's arrest. The Form I-286 indicates that the custody determination was made at 1:51 PM. Neither the Form I-200 Warrant for Arrest of Alien nor the Notice to Appear are time-stamped. Turning to the content of the arresting paperwork, this factual record resembles that in *Regalado-Nauta*, in which the Form I-286 "merely reflected that the petitioner was 'Detained' and provided 'no explanation or reasoning as to why the authorizing officer made that determination.'" 2026 WL 2740528, at *3 (quoting *Dos*

*Reis*, 2026 WL 1746649, at *4). The information that is found in the Form I-213 counters any argument as to Hernandez's particular risk of flight or danger to the community, noting that he "does not have any known criminal record," he "does not have any outstanding wants or warrants," he "denies membership in any gang or criminal organization," and he stated he is married with one minor child. Because Hernandez has not been afforded an individualized custody determination, his detention under 8 U.S.C. § 1226(a) is unlawful.

**e. Hernandez's Detention Violates His Constitutional Due Process Rights.**

Hernandez's continued detention violates his constitutional due process rights. Due process in the civil immigration detention context requires procedures that are reasonably calculated to avoid erroneous deprivation of liberty. See *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021) (applying *Mathews* to civil immigration detention context). The *Mathews* factors weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and, (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, Hernandez has an interest in maintaining his personal liberty free from detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Second, Hernandez's detention risks erroneously depriving him of his rights because he has not yet been provided with an opportunity for a neutral decision-maker to make an individualized determination as to whether he poses a

flight risk or a danger to the community. Although a bond hearing has been scheduled, no individualized custody determination *has yet* been made, and the record suggests that Hernandez is not likely to abscond from his bond hearing or pose any danger to his community. Third, while the Government has a legitimate interest in preventing the release of dangerous noncitizens and those who fail to appear at future hearings, that interest is not outweighed by the balance of the first and second *Mathews* factors. Immediate release will remedy the violation of Hernandez's due process rights. *See Munaf v. Green*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful executive] detention is, of course, release.").

## III. CONCLUSION

For the foregoing reasons, Hernandez's Petition for a Writ of Habeas Corpus is granted. An appropriate Order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**